FILED
United States Court of Appeals
Tenth Circuit

November 12, 2015

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

JASON C. CORY,

      Plaintiff - Appellant,

v.

CITY OF BASEHOR; LLOYD
MARTLEY, Basehor City Police Chief;
ROBERT PIERCE, Police Lieutenant, City
of Basehor Police Department,

      Defendants - Appellees.

No. 14-3270
(D.C. No. 2:12-CV-02547-JTM)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

Mr. Cory brought this action alleging state and federal claims related to the

termination of his employment as a police officer for the City of Basehor, Kansas.

The district court granted summary judgment to the defendants on all of his claims

and denied his motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment.

On appeal, he presents a single issue: whether the district court properly granted

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

summary judgment to the defendants on his claim that they terminated his employment in retaliation for his exercise of his First Amendment rights. We affirm the district court's judgment.

## BACKGROUND

The undisputed facts are as follows.[1] Mr. Cory began his employment with the Basehor Police Department in September 2007. During his employment he reported to his superiors a number of issues involving alleged violations of the department's policies that he believed affected safety and integrity in the department.

In particular, he reported that officers kept unloaded shotguns in patrol vehicles; officers had placed shotguns into the trunks of their vehicles rather than keeping them in the passenger compartment where they would be accessible to the officer; there were problems with the camera in his patrol vehicle; the holster the department provided was incorrect for the sidearm the department had issued to him; the tires on his patrol car were bald; an officer had made a threat of physical violence against him on the telephone; and he had observed his fellow officers going home or to the office to sleep on the job instead of remaining on patrol, making those officers unavailable to provide backup. He also alleged that he received conflicting direction from Lloyd Martley, the City's police chief, and Robert Pierce, its police lieutenant,

---

[1] The district court deemed admitted the facts defendants presented in their summary-judgment motion because Mr. Cory failed to dispute these facts as required by Rules 56.1(a) and (b)(1) of the District of Kansas Local Rules. Mr. Cory has not specifically challenged this ruling on appeal, and we find no abuse of discretion, *see Amundsen v. Jones*, 533 F.3d 1192, 1197 (10th Cir. 2008) ("We review a district court's application of its local rules for an abuse of discretion.").

concerning whether he should pursue a criminal investigation in a case he believed involved identity theft, and that he overheard an inappropriate conversation between Chief Martley and Lieutenant Pierce concerning whether and how officers should respond to an emergency call involving a child's asthma attack. During his deposition testimony, Mr. Cory admitted that in reporting these incidents or perceived violations to his command staff, he was doing what was required of him under his Standard Operating Procedure; in making the reports, he was doing his job; and that reporting such violations was part of his job as a Basehor Police Officer. *See* Aplt. App. at 52.

On June 30, 2010, Mr. Cory had a meeting in Chief Martley's office with Chief Martley and Lieutenant Pierce to discuss an allegation that Mr. Cory had improperly used city resources. A confrontation ensued, during which Mr. Cory and Lieutenant Pierce both reached to shut the office door. Lieutenant Pierce's hand knocked Mr. Cory's hand out of the way, and Mr. Cory backed up to the wall. Lieutenant Pierce brought his finger up close to Mr. Cory's face and thumped him twice on the chest. Mr. Cory was not hurt or offended by these actions, but he was frightened by them. The next day, Lieutenant Pierce issued Mr. Cory a letter of reprimand, stating that he had violated a section of the Code of Conduct requiring courteous and respectful behavior toward superiors.

On July 9, 2010, Chief Martley drove Mr. Cory around Basehor and they discussed all of Mr. Cory's reports and concerns. Mr. Cory was carrying a voice recorder in his shirt pocket to record their conversation. Although he asserts that the

3

recorder was in plain view, he did not tell Chief Martley that he was recording their conversation or seek his permission to do so. After realizing that Mr. Cory had recorded their conversation without his consent, Chief Martley suspended him indefinitely.

While on suspension, Mr. Cory attempted to file a criminal complaint against Lieutenant Pierce with the Basehor Police Department relative to the June 30 incident, but Lieutenant Pierce escorted him off the police department premises. Mr. Cory also filed a report with the Leavenworth County Sheriff's Department alleging that Lieutenant Pierce had assaulted him, but the Sheriff's Department elected not to pursue the matter.

On July 15, 2010, the City of Basehor terminated Mr. Cory's employment. Chief Martley later explained that he had never caught any other officer in the department recording their private conversations; that Mr. Cory's "incessant complaining about the Department policies, his coworkers and his supervisors disrupted the efficient operation of the Department"; and that his employment was terminated "due to his inability to get along with his coworkers and because he lost the trust of his command staff." Aplt. App. at 147.

## DISCUSSION

### 1. Review Standards

"We review the district court's grant of summary judgment de novo." *Seifert v. Unified Gov't of Wyandotte Cty./Kan. City*, 779 F.3d 1141, 1150 (10th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmovant." *Seifert*, 779 F.3d at 1150 (internal quotation marks omitted).

### 2. First Amendment Rights of Public Employees

The Supreme Court has explained that "citizens do not surrender their First Amendment rights by accepting public employment," *Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014), but public employees do "not enjoy the same scope of First Amendment rights as a private citizen," *Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015). "Because government employers, like private employers, need a significant degree of control over their employees' words and actions, not every restriction on a public employee's speech amounts to a deprivation of First Amendment rights." *Seifert*, 779 F.3d at 1151 (citation, alteration, and internal quotation marks omitted). "The First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (alteration and internal quotation marks omitted).

"The familiar *Garcetti/Pickering* analysis governs First Amendment retaliation claims." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015) (internal quotation marks omitted). It consists of five elements:

5

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (internal quotation marks omitted). "The first three elements are typically questions of law (though they can turn on disputed issues of fact), while the last two are typically questions of fact." *Seifert*, 779 F.3d at 1151.

The issue here we must resolve involves the first element. In *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." The district court reasoned that when Mr. Cory made his complaints, "it is undisputed that [he] was not speaking as a citizen but as a City of Basehor employee, and his speech was not entitled to First Amendment protection." Aplt. App. at 330. It further determined that the lack of a constitutional violation meant that the individual defendants were entitled to qualified immunity concerning this claim. *Id.* at 336.

### 3. Mr. Cory's Arguments

In his summary-judgment response, Mr. Cory identified his protected speech as his complaints about violations of "serious safety policies and/or practices within the department that not only affected employees, but had threatened the safety of the public at large." Aplt. App. at 185. He asserted that he had been fired for reporting

6

"several incidents of serious health and safety violations perpetrated by the Basehor

City Police Department." *Id.* at 194. But he failed to dispute the defendants'

contention that he was doing his job when he made these reports.[2] He now argues

that the district court should not have relied upon uncontroverted facts to reach its

---

[2] In his Rule 59(e) motion, Mr. Cory belatedly attempted to dispute the statement of facts contained in the defendants' summary-judgment motion and to present additional evidence in support of his claims, including evidence that purportedly showed that the reports he made were not part of his job duties. He also modified his assertions concerning his protected speech. He stated that the "most significant report" he made did not involve his reporting of departmental health and safety violations, but was "the report made against Lieutenant Pierce for his physical assault against [Mr. Cory]." *See* Aplt. App. at 352. He argued that he made this report as a private citizen, and that it was not part of his job duties. *Id.* at 352-53.

"The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro–Machinery (Group) Co. Ltd.*, 701 F.3d 598, 611 (10th Cir. 2012) (brackets and internal quotation marks omitted). "Grounds for granting a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (internal quotation marks omitted). "To support a Rule 59(e) motion with additional evidence . . . the moving party must show (1) that the evidence is newly discovered, or (2) if the evidence was available at the time summary judgment was granted, that counsel made a diligent yet unsuccessful attempt to discover the evidence." *Id.* (internal quotation marks omitted).

The district court denied Mr. Cory's Rule 59(e) motion, reasoning that the additional evidence he presented was not newly discovered, and that he failed to show clear error or manifest injustice in the order granting summary judgment. "We review the denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion." *Id.* at 610 (citation and internal quotation marks omitted). Mr. Cory has made no effort in his appellate briefing to show that the district court abused its discretion in denying his Rule 59(e) motion, or that he satisfied the Rule 59(e) standards. Accordingly, we affirm the denial of his motion.

conclusion, because the issue of whether his speech was made pursuant to his official duties is one of law, not of fact. We find this argument unpersuasive.

We have recognized that the "official duties" question, although involving an issue of law, can turn on the resolution of factual issues. *See Seifert*, 779 F.3d at 1151. That is the case here. As noted, Mr. Cory admitted during his deposition that he made the reports in question as part of his official job duties. He failed to dispute that fact in his response to the defendants' summary-judgment motion. In his opening brief in this court, he makes conclusory assertions that some of the statements in question were made outside of his ordinary duties as a police officer. *See* Aplt. Opening Br. at 11-12. In light of the defendants' summary-judgment showing, however, such assertions are insufficient to demonstrate the existence of a genuine issue of material fact or to show that the defendants were not entitled to judgment as a matter of law.

Mr. Cory also argues that the district court failed to properly consider the Supreme Court's refinement of *Garcetti*'s "official duties" rule articulated in *Lane* and applied in *Seifert*. In *Lane*, the Supreme Court held that the First Amendment "protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." *Lane*, 134 S. Ct. at 2374-75. This was true "even when the testimony relates to . . . public employment or concerns information learned during that employment," *id.* at 2378, because under *Garcetti*, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—

8

rather than citizen—speech," *id.* at 2379.  Rather, the issue is "whether the speech at issue is itself within the scope of an employee's duties, not whether it merely concerns those duties."  *Id.*; *see also Seifert*, 779 F.3d at 1152 (holding that reserve sheriff's deputy's "testimony [in civil rights action] was protected speech," because "[i]t concerned his work but was not part of it.").

Lane and *Seifert* do not offer Mr. Cory any help, however.  The undisputed summary-judgment evidence in this case was that Mr. Cory's reports did not merely "concern" his duties, but were made "within the scope" of his duties as a police officer.  *See* Aplt. App. at 52.  Moreover, he presents no facts of record sufficient to create a genuine issue concerning his assertion that his reports were made "outside the course of his *ordinary* job responsibilities," *Lane*, 134 S. Ct. at 2374-75 (emphasis added).  The district court properly granted summary judgment in favor of the defendants on his First Amendment retaliation claim.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge